## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANIEL REALE
*Plaintiff,*

v.

No. 3:21-cv-01571 (VAB)

MATCH GROUP, LLC,
*Defendant.*

## RULING AND ORDER ON MOTION TO COMPEL ARBITRATION
## AND MOTION TO REMAND TO STATE COURT

Daniel Reale ("Plaintiff") initiated this action in October 2021 against Match Group,
LLC ("Match"). Compl., ECF No. 1-1 (Nov. 24, 2021) ("Compl."). Mr. Reale alleges that
Match, through its Tinder platform, committed fraud, negligent misrepresentation, and violations
of the Connecticut Unfair Trade Practices Act ("CUTPA"). Compl.; Am. Compl. at 7–9, ECF
No. 25 (Jan. 13, 2022) ("Am. Compl.").

On November 24, 2021, Match, a Delaware company with its principal place of business
in Dallas, Texas, removed this case from the Superior Court for the Judicial District of Windham
on the basis of diversity jurisdiction. Notice of Removal at 2–3, ECF No. 1 (Nov. 24, 2021)
("Notice of Removal").

On December 7, 2021, Match moved to compel arbitration and to stay all proceedings in
this action pending arbitration. Def. Match Group, LLC's Mot. to Compel Arbitration and to
Stay all Proceedings in this Action Pending Arbitration, ECF No. 17 (Dec. 7, 2021) ("Mot. to
Compel Arbitration").

On February 8, 2022, Mr. Reale moved to remand the case to state court for lack of federal jurisdiction. Mot. to Remand to State Court, ECF No. 29 (Feb. 8, 2022) ("Mot. to Remand").

On July 19, 2022, Mr. Reale moved to terminate all stays relating to arbitration. Mot. to Terminate Any and All Stays Relating to Arbitration, ECF No. 32 (July 19, 2022) ("Mot. to Terminate Stays").

For the reasons that follow, Match's motion to compel arbitration is **GRANTED**, Mr. Reale's motion to remand the case is **DENIED**, and Mr. Reale's motion to terminate all stays relating to arbitration is **DENIED as moot**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Mr. Reale has sued Match for alleged fraud, negligent misrepresentation, and CUTPA violations related to its Tinder platform. Am. Compl.

### B.  Procedural Background

On October 19, 2021, Mr. Reale filed his complaint in the Superior Court for the Judicial District of Windham. Compl.

On November 24, 2021, Match removed this case from the Superior Court to the United States District Court for the District of Connecticut on the basis of diversity jurisdiction. Notice of Removal.

On December 7, 2021, Match filed a motion to compel arbitration and to stay all proceedings in this action pending arbitration. Mot. to Compel Arbitration; Mem. of Law in Supp. of Def. Match Group, LLC's Mot. to Compel Arbitration and to Stay all Proceedings

in This Action Pending Arbitration, ECF No. 17-1 (Dec. 7, 2021) ("Mem. to Compel Arbitration").

On December 10, 2021, Match moved to extend the deadline to answer Mr. Reale's complaint and any amended complaint filed, and any discovery deadlines until 30 days after the Court ruled on the motion to compel arbitration. Second Mot. for Extension of Time, ECF No. 18 (Dec. 10, 2021).

On December 13, 2021, the Court granted the motion to extend deadlines until 30 days after the Court ruled on the pending motion to compel arbitration and stay all proceedings. Order, ECF No. 19 (Dec. 13, 2021).

On January 13, 2022, Mr. Reale amended his complaint. Am. Compl.

Also on January 13, 2022, Mr. Reale filed his opposition to the motion to compel arbitration. Mem. in Opp'n to Def.'s Mot. to Compel Arbitration, ECF No. 26 (Jan. 13, 2022) ("Opp'n to Mot. to Compel Arbitration").

On January 27, 2022, Match replied to Mr. Reale's opposition to the motion to compel arbitration. Reply Mem. of Law in Further Supp. of Def. Match Group, LLC's Mot. to Compel Arbitration and to Stay All Proceedings in this Action Pending Arbitration, ECF No. 27 (Jan. 27, 2022) ("Reply to Mot. to Compel").

On January 30, 2022, Mr. Reale filed a surreply to Match's reply concerning the motion to compel arbitration. Surreply to Defs.' Reply to Opp'n to Mot. to Compel Arbitration, ECF No. 28 (Jan. 30, 2022).

On February 8, 2022, Mr. Reale moved to remand the case to state court. Mot. to Remand to State Court, ECF No. 29 (Feb. 8, 2022) ("Mot. to Remand").

On February 17, 2022, Match opposed Mr. Reale's motion to remand. Def. Match Group, LLC's Opp'n to Pl.'s Mot. for Remand, ECF No. 30 (Feb. 17, 2022).

On July 19, 2022, Mr. Reale moved to terminate all stays relating to arbitration. Mot. to Terminate Any and All Stays Relating to Arbitration, ECF No. 32 (July 19, 2022) ("Mot. to Terminate").

On August 9, 2022, Match opposed Mr. Reale's motion to terminate all stays relating to arbitration. Opp'n to Pl.'s Mot. to Terminate Any and All Stays Pending Arbitration, ECF No. 35 (Aug. 9, 2022) ("Opp'n to Mot. to Terminate").

## II.  STANDARD OF REVIEW

### A.  Motion to Remand

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a).

"[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). The party opposing a motion to remand bears the burden of showing that the requirements for removal are satisfied. *See United Food & Com. Workers Union, Loc. 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court."); *see also Cal. Pub. Emps. 'Ret. Sys.*

4

*v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("[T]he defendant bears the burden of demonstrating the propriety of removal." (quoting *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994))).

**B. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA enables any "party aggrieved" by the failure of another to arbitrate under a written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Courts follow a two-part test to determine whether claims are subject to arbitration, considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "A court may not deny arbitration where there is a valid arbitration agreement that covers the asserted claims." *Davis v. Macy's Retail Holdings, Inc.*, No. 3:17-CV-1807 (JBA), 2018 WL 4516668, at *2 (D. Conn. Sept. 19, 2018) (citation omitted).

In the context of a motion to compel arbitration brought under the FAA, courts apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10-CV-

1488 (WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011) (applying summary judgment standard in the context of a motion to compel arbitration), *aff'd*, 496 F. App'x 104 (2d Cir. 2012). The party seeking to compel arbitration must "substantiat[e] [its] entitlement [to arbitration] by a showing of evidentiary facts" that support its claim that the other party agreed to arbitration. *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* (citation omitted). If the evidence suggests a genuine issue of material fact, the court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997))).

## III. DISCUSSION

### A. Motion to Remand

The removal statute permits removal of civil actions "of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). In other words, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Mr. Real moves to remand because "there is no basis for federal jurisdiction" and "the true nature of the Defendants' enterprise and corporate structure is know[n], and said amended complaint has been filed." Mot. to Remand at 1. In his Amended Complaint, Mr. Reale, "upon and after engaging in due diligent inquiry, specifically and emphatically state[s] that damages will be less than $75,000." Am. Compl., ECF No. 25 (Jan. 13, 2022).

In response, Match notes that diversity jurisdiction has not been disputed and was established at the time of removal, which is when diversity jurisdiction is determined. Match emphasizes that Mr. Reale twice confirmed that the amount in controversy was greater than $75,000. Opp'n to Mot. to Remand at 2 (citing Ex. A to Reply Mem. of Law in Further Supp. of Def. Match Group, LLC's Mot. to Compel Arbitration and to Stay All Proceedings in this Action Pending Arbitration, ECF No. 27-1 (Jan. 27, 2022) ("Ex. A"); Ex. B to Reply Mem. of Law in Further Supp. of Def. Match Group, LLC's Mot. to Compel Arbitration and to Stay All Proceedings in this Action Pending Arbitration, ECF No. 27-2 (Jan. 27, 2022) ("Ex. B")). Match argues that Mr. Reale's amendment of the complaint after removal, to reduce his demand to $75,000 or less, does not divest this Court of jurisdiction. *Id.* at 2–3. They also note that Mr. Reale does not challenge that the jurisdictional threshold was satisfied at the time of removal. *Id.* at 3.

The Court agrees.

As a general matter, "federal courts are courts of limited jurisdiction," meaning they are only authorized to resolve cases that either address questions of federal law or satisfy diversity jurisdiction requirements. *See* 28 U.S.C. §§ 1331, 1332; *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28

U.S.C. § 1332(a). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the

district courts of the United States have original jurisdiction, may be removed by the defendant .

. . to the district court of the United States for the district . . . embracing the place where such

action is pending." *Id.* § 1441(a). "The party asserting federal jurisdiction must demonstrate

federal subject matter jurisdiction by competent proof." *Royal Ins. Co. v. Jones*, 76 F. Supp. 2d

202, 204 (D. Conn. 1999) (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S.

178, 189 (1936)).

On November 24, 2021, when Match removed this action from the Superior Court for the

Judicial District of Windham to the United States District Court for the District of Connecticut

on the basis of diversity jurisdiction, the case properly met the requirements of 28 U.S.C. §

1332(a). Mr. Reale is a resident of Plainfield, Connecticut. Notice of Removal at 2–3. Match is a

Delaware limited liability company with its principal place of business in Dallas, Texas. Notice

of Removal at 3. It is thus a citizen of Delaware and Texas.

At the time of removal, Match demonstrated that the amount in controversy exceeded

$75,000. The complaint Mr. Reale filed in the Superior Court requested damages, punitive

damages, treble damages, "[a] court appointed receiver to secure stolen sums from the Plaintiff

and others similarly situated," "[a] prejudgment remedy in the amount of $50,000," costs and

attorney's fees, pre- and post-judgment interest, and "[o]ther relief the Court deems proper."

Compl. at 10. Also, twice before amending his complaint once the case was removed to this

Court, Mr. Reale confirmed that the amount in controversy exceeded $75,000. Ex. A at 2 (when

asked whether he would stipulate that the complaint does not seek more than $75,000, Mr. Reale

stated that the case will "be well north of $75,000 by the time depositions and experts come into

play"); Ex. B at 2 (Mr. Reale, when asked whether he would consent to an extension of time to respond to his complaint if the case were removed to federal court, stated that he could "confirm the basis of that removal to be that recovery would exceed $75,000").

"It has long been the case that the jurisdiction of the court depends on the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (internal citation and quotation marks omitted); *see also Wolde-Meskel v. Vocational Instruction Project Cmty. Sers., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule."); *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir. 1996) ("The amount in controversy is determined at the time the action is commenced." (internal citation and quotation marks omitted)). Under clearly established precedent, Mr. Reale cannot now divest this Court of jurisdiction by amending his complaint to reduce the amount in controversy below the jurisdictional requirement. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached."); *Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) (noting "the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of [the statutory minimum]"); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010) ("We write today to make clear that a plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied.").

Accordingly, Mr. Reale's motion to remand will be denied.

### B. Motion to Compel Arbitration

Match argues that it entered into various terms of use agreements with Mr. Reale and that his claims fall within the scope of the arbitration agreement.

#### 1. Choice of Law

The Second Circuit has observed that "[t]he validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005). This is logical, because "[a]pplying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (eventually declining to "resolve this typically thorny choice-of-law question, because both Connecticut and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term."); *see also Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715 (PKC), 2013 WL 6017444, at *3 (S.D.N.Y. Nov. 13, 2013) (quoting the above language). *But see Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005) ("[A] choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract." (citation omitted)).

Match notes that the parties agreed that the law of Texas governs their agreement. Mot. to Compel Arbitration at 10 (citing Ex. D to Def. Match Group, LLC's Mot. to Compel Arbitration and to Stay all Proceedings in this Action Pending Arbitration at 15, ECF No. 17-6 (Dec. 7, 2021) ("TOU Agreement")). But even under both Texas and Connecticut law, they argue, "the

result is the same and decisive: Plaintiff and Match formed a valid agreement to arbitrate." *Id.* Mr. Reale does not contest the application of Texas law in either his opposition or surreply.

The Court need not resolve this choice-of-law question because both Connecticut and Texas apply substantially similar rules for determining whether the parties have agreed to a contract term. *See, e.g.*, *Schnabel*, 697 F.3d at 119 ("But as the district court recognized, neither that court nor this one need resolve this typically thorny choice-of-law question for determining whether the parties have mutually assented to a contract term. . . . Which state's law applies is therefore without significance"). Under both Connecticut and Texas law, the focus is on the parties' outward manifestations of assent. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) ("Contracts require mutual assent to be enforceable."); *Fortier v. Newington Grp., Inc.*, 30 Conn. App. 505, 510, *cert. denied*, 225 Conn. 922 (1993) ("[F]or an enforceable contract to exist, the court must find that the parties' minds had truly met."); s*ee also, e.g.*, *Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 375 (D. Conn. 2013) ("Under the laws of all four potentially relevant state jurisdictions (Kansas, Missouri, Texas, and Connecticut), a party waives his right to avoid a contract for misrepresentation if he manifests to the other party his intent to affirm the contract, acts in a manner inconsistent with disaffirmance, or fails within a reasonable time to disclose his intention to avoid the contract.").

### 2. Validity of Agreement to Arbitrate

"The threshold question facing any court considering a motion to compel arbitration" is "whether the parties have indeed agreed to arbitrate." *Schnabel,* 697 F.3d at 118. That question "is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002)); *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a

certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (internal citations omitted)).

Under both Connecticut and Texas law, a contract is formed through an offer and an acceptance of that offer. *See Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *3 (N.D. Tex. Oct. 2, 2019) ("Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding."); *Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.,* 159 Conn. 242, 246 (1970) ("It is elementary that to create a contract there must be an unequivocal acceptance of an offer. . . . The acceptance of the offer must, however, be explicit, full and unconditional." (citations omitted)); *Ubysz v. DiPietro*, 185 Conn. 47, 51 (1981) ("[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; and the identities of the contracting parties must be reasonably certain." (internal citations omitted)).

Courts in both Connecticut and Texas have recognized the enforceability of sign-in wraps, which are agreements notifying users that by proceeding with either a sign-in or a purchase they are agreeing to the terms of service or a user agreement. *See Phillips*, 2019 WL 4861435, at *4 (applying Texas law to a case involving a sign-in wrap and finding that there was a valid agreement where the notice was legible, the hyperlink to the user agreement was reasonably conspicuous, and a reasonably prudent smartphone user would understand they were assenting to the user agreement); *Edmundson v. City of Bridgeport Bd. of Educ.*, No. CV196083811S, 2019 WL 5066951, at *2 (Conn. Super. Ct. Sept. 18, 2019) (concluding that the design of the screen was "reasonable," the disclosure "text and hyperlink to the Agreement

appear directly below each other," and that the user's click constitutes "unambiguous[] assent[] to the terms" of the agreement under Connecticut law (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017))).

These sign-in wraps are used by Match, which Mr. Reale encountered when signing in and purchasing subscriptions or features on Tinder. Mot. to Compel at 3–6. Match argues that their sign-in wraps "more than adequately disclosed to Plaintiff that tapping the 'Log In' or 'BUY NOW' buttons constituted Plaintiff's agreement to the TOU, and the parties formed a valid agreement in accordance with the TOU (including an agreement to arbitrate)." Mot. to Compel at 13. Mr. Reale does not challenge the use of sign-in wraps in either his opposition or his surreply.

The Court agrees with Match.

A "reasonably prudent user" would be on notice of the terms of the agreement based on the positioning of the Log In button directly below the disclosure which explains that logging in constitutes an agreement to the TOU. The hyperlink was prominent and available for Mr. Reale to review. The same is true of the screens that populated Mr. Reale's screen when he purchased subscriptions and features. Mot. to Compel at 5. Mr. Reale therefore had adequate notice of the agreement as to be bound by the TOU.

### 3. Scope of the Arbitration Agreement

"In accordance with the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it 'may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"

*WorldCrisa*, 129 F.3d at 74 (quoting *Associated Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir. 1987)).

"When considering whether claims fall within the scope of an arbitration clause . . . we analyze the factual allegations made" in Plaintiffs' Complaint. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc*., 198 F.3d 88, 99 (2d Cir. 1999)). "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id*. (quoting *Smith/Enron*, 198 F.3d at 99).

Match argues that once the Court determines there was an agreement to arbitrate, the Court should grant the motion because the parties agreed to delegate issues of arbitrability to the arbitrator. Mot. to Compel at 15–16. In any event, they argue, each claim comes within the broad scope of the arbitration agreement. *Id.* at 16–18.

In opposition, Mr. Reale only asserts that the case does not belong in federal court, and claims that "contracts that violate public policy are unenforceable." Opp'n to Mot. to Compel Arbitration at 3 (quoting *Solomon v. Gilmore*, 248 Conn. 769, 774 (1999)). He also cites to *Hanks v. Powder Ridge Rest. Corp*., 276 Conn. 314 (2005), as "control[ing] how the Court should evaluate the Terms of Service . . . because the restriction on arbitration functions to limit the Defendants' liability and the Plaintiff's recourse." *Id.* Finally, he claims that the agreement was "fraudulently induced" and therefore "cannot stand." *Id.* at 5. Therefore, he argues, the motion to compel arbitration should be denied.

In response, Match argues that any argument about unconscionability or being fraudulently induced cannot defeat the motion because the parties delegated questions of arbitrability to the arbitrator and the generalized challenges to the enforceability of a contract as

a whole and not the arbitration agreement specifically cannot defeat arbitration. Reply to Mot. to Compel at 2–3.

The Court agrees.

This Circuit has recognized that when "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator," the question is delegated to the arbitrator and not the courts. *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x. 3, 5 (2d Cir. 2013) (summary order); *see also, e.g.*, *Sidell v. Structured Settlement Invs., LP*, No. 3:08-cv-00710 (VLB), 2009 WL 103518 (D. Conn. Jan. 14, 2009) (deciding that the Court "need not address any of [the plaintiff's] arguments against arbitration if it finds that the parties have agreed to arbitrate arbitrability" (citing *Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir. 2002))).

Here, the TOU Agreement's arbitration clause covers all disputes, and establishes that the arbitrator shall determine the arbitrability of the dispute. It states,

**15. Retroactive and Prospective Arbitration, Class-Action Waiver, and Jury Waiver.** . . .

1.  The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service, regardless of the date of accrual and including past, pending, and future claims, shall be BINDING ARBITRATION administered by JAMS . . . .

2.  By accepting this Agreement, you agree to the Arbitration Agreement in this Section 15 . . . . In doing so, BOTH YOU AND TINDER GIVE UP THE RIGHT TO GO TO COURT to assert or defend any claims between you and Tinder . . . .

3.  If you assert a claim against Tinder outside of small claims court (and Tinder does not request that the claim be moved to small claims court), your rights will be determined by a NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY, and the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute. The same is true for Tinder. Both you and Tinder are entitled to a fair hearing before the arbitrator. . . .

15

TOU Agreement at 12–13. Mr. Reale agreed to these terms of use when he created his account in July 2019, and he "reaffirmed his agreement to arbitrate on more than 50 different occasions—at least 26 times when he logged in, and 30 other times when he purchased subscriptions or a la carte features." Mot. to Compel at 2–6.

Mr. Reale's opposition to the motion to compel arbitration is a challenge to the policy rationale behind arbitration clauses generally. Connecticut case law is to the contrary, and the case law noted above shows that arbitration clauses and agreements of the type Mr. Reale encountered have been accepted.

Accordingly, Mr. Reale must arbitrate his claims against Match. Match's motion to compel arbitration will therefore be granted, and Mr. Reale's motion to terminate all stays relating to arbitration will be denied as moot.

### 4. Stay of Proceedings

The Second Circuit has clarified that a stay of all proceedings is mandatory "after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("The FAA's text, structure, and underlying policy command this result. . . . The plain language specifies that the court 'shall' stay proceedings pending arbitration, provided an application is made and certain conditions are met. . . . Nowhere does the FAA abrogate this directive or render it discretionary."). But "if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

"The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Id.* at 856 (citation

omitted); *see also Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110–11 (S.D.N.Y. 2017) (noting that "*Katz* did not explicitly address whether the FAA requires a district court to stay all proceedings where, as here, fewer than all claims have been referred to arbitration," collecting cases indicating that decision to stay balance of proceedings remains within the district court's discretion, and concluding that "whether or not the FAA requires a stay where some but not all claims are referable to arbitration, a district court may stay proceedings in its discretion").

Because arbitrability of the claims is to be decided by the arbitrator, the Court will stay all proceedings pending resolution.

## IV. CONCLUSION

For the reasons explained above, Mr. Reale's motion to remand the case is **DENIED**. Match's motion to compel arbitration is **GRANTED**, and Mr. Reale's motion to terminate all stays relating to arbitration is **DENIED as moot**.

The Clerk of Court is respectfully directed to administratively close this case until the completion of arbitration, at which time, either party may move to re-open the case, in order to seek further action by this Court, to the extent appropriate.

**SO ORDERED** at Bridgeport, Connecticut this 9th day of September, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE